Philip L. Martin (USB 11923)
**VALLIS LEGAL, PLLC**
1445 North 1200 West
Orem, UT 84057
385-429-0484
philip@vallislegal.com

Jeff Toppel (*pro hac vice application pending*)
**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
(480) 483-9600
*Attorneys for Plaintiff The Flower Shop*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRUE NORTH OF UTAH, LLC, D/B/A THE FLOWER SHOP,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, CRYSTAL STOWE CAREY, in her official capacity as General Counsel of the NLRB; JAMES R. MURPHY, in his official capacity as Chairman of the NLRB; DAVID M. PROUTY and SCOTT A. MAYER, in their official capacity as Board Members of the NLRB; and GEOFFREY CARTER, in his official capacity as an Administrative Law Judge of the NLRB,<br><br>    Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>    Civil No. _____<br><br>    Judge _____ |

True North of Utah, LLC d/b/a The Flower Shop ("The Flower Shop"), by and through

its counsel of record, brings this action for declaratory and injunctive relief, alleging as follows:

**INTRODUCTION**

1.      This Action arises from the NLRB's attempt to subject The Flower Shop to administrative proceedings in NLRB case number 27-CA-340860 that violates The Flower Shop's rights under the United States Constitution.

2.      The Flower Shop is likely to succeed on the merits of its constitutional claims that: (a) the ALJ overseeing the administrative proceeding is unconstitutionally protected from removal in contravention of Article II of the Constitution; (b) the NLRB's Board Members are unconstitutionally protected from removal in contravention of Article II of the Constitution; and (c) the NLRB's adjudication of private rights and legal relief violates The Flower Shop's Seventh Amendment right to a jury trial.

3.      The Flower Shop is also likely to succeed on the merits of its jurisdictional claim that the NLRB does not have jurisdiction over a company that, by its very nature, cannot be an interstate employer "affecting commerce."

4.      The Flower Shop will suffer irreparable economic and constitutional harm absent declaratory and injunctive relief because it will be compelled to undergo an unconstitutional proceeding before an insufficiently accountable agency official that lacks proper jurisdiction, in violation of both the Constitution and the jurisdictional limits placed by Congress under the National Labor Relations Act ("NLRA").

5.      The Flower Shop will suffer irreparable harm because the hearing's irreversible adjudicatory consequences: compelled testimony, public disclosure, creation of the administrative record, and the ALJ credibility findings entitled to substantial deference.

6. Being "subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here and now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

7. The balance of equities and public interest weigh in favor of The Flower Shop.

8. There is an unquestionable public interest in ensuring that federal agencies comply with the law and do not operate untethered to requirements imposed by the Constitution.

## JURISDICTION AND VENUE

9. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over The Flower Shop's claims that fundamental aspects of the NLRB's structure violate the Constitution.

10. The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and under the Court's inherent equitable powers.

11. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers of an agency of the United States and a substantial part of the events giving rise to the claim occurred in Ogden, Utah. Specifically, the administrative proceedings that are the subject of this Complaint are pending in Ogden, Utah.

## PARTIES

12. The Flower Shop was formed to provide a diverse array of medical marijuana products to patients throughout the state of Utah, pursuant to the Utah Medical Cannabis Act, Utah Code § 26B-4-216, *et al.* (the "Cannabis Act").

13. The Flower Shop's approach was and continues to be a focus on using industry standard practice to provide pure, safe, and natural products to its Utah patients.

14. The Flower Shop serves medical patients in Utah under programs administered by the Utah Department of Agriculture and Food ("UDAF") and that are the creation of Utah state law.

15. As a result, The Flower Shop is subject to the requirements of the Utah Hemp and Cannabinoid Act, Utah Code Annotated § 4-41-101, *et seq.* and Utah's laws governing Cannabis Production Establishments and Pharmacies, Utah Code Annotated § 4-41a-101, *et seq.* Subject to those statutes, UDAF has promulgated specific rules and regulations that govern the conduct of the pharmacies.

16. Pharmacies in Utah, such as The Flower Shop, must comply with these various Utah state regulations to maintain their license to operate.

17. The Flower Shop is only licensed to serve medical cannabis to patients in Utah and may not serve patients outside the state of Utah.

18. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C.

19. The NLRA empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

20. Defendant Carey is General Counsel of the NLRB. She is sued in her official capacity.

21. Defendant Murphy is Chairperson of the NLRB. He is sued in his official capacity.

22. Defendant Mayer is a Member of the NLRB. He is sued in his official capacity.

4

23.     Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

24.     Defendant Geoffrey Carter is an ALJ of the NLRB assigned by the NLRB to preside over the NLRB's proceedings against The Flower Shop. He is sued in his official capacity.

## FACTS

25.     On April 25, 2024, the United Food and Commercial Workers, Local 99 (the "Union") filed a charge with the NLRB in case number 27-CA-340860 (the "NLRB Case") alleging The Flower Shop violated Sections 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a).

26.     In response to the NLRB's request for evidence in the NLRB Case, The Flower Shop submitted a position statement and supporting evidence refuting the allegations in the NLRB Case on August 9, 2024.

27.     In its response, The Flower Shop asserted its object to the NLRB's assertion over The Flower Shop as a state licensed cannabis entity and specifically reserved its jurisdiction arguments.

28.     The Union amended its charge in the NLRB Case to add new allegations on three separate occasions: June 7, 2024, April 15, 2026, and May 12, 2026.

29.     The Flower Shop responded to multiple requests from the NLRB seeking additional evidence in the NLRB Case, providing evidence refuting the additional allegations made in the NLRB Case.

30.     On June 18, 2026, the Regional Director for Region 27 of the NLRB issued an administrative complaint and notice that an administrative hearing would occur before an ALJ on July 21, 2026 (the "Complaint").  **[Ex. A]**

31.    On June 22, 2026, the parties were informed that the NLRB Case had been assigned to ALJ Geoffrey Carter, the Associate ALJ in the NLRB's Washington, D.C. office of its Division of Judges.

32.    The Complaint alleges that four employees – Zoe Ruthven, Todd Wagner, Bridget Hughes, and Sara Rueda – were terminated by The Flower Shop in violation of the NLRA during the period between March 21, 2024, and May 10, 2024.

## COUNT I

### THE NLRB'S EXERCISE OF JURISDICTION OVER AN INTRASTATE CANNABIS EMPLOYER IS UNLAWFUL

33.    The Flower Shop restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

34.    The Flower Shop is a Utah limited liability company organized for the specific purpose of operating a cannabis operation under the Utah Medical Cannabis Act, Utah Code § 26B-4-216, *et al.* (the "Cannabis Act").

35.    The Cannabis Act is a closed-stated regulatory system that requires operators, such as The Flower Shop, to operate subject to strict requirements.

36.    Under the Cannabis Act, operators are only permitted to sell medical cannabis to individuals that are "medical cannabis cardholders."

37.    Under the Cannabis Act, a person may not operate a medical cannabis pharmacy without a Utah license.

38.    The Cannabis Act requires pharmacy applicants to identify the proposed name and address, ownership/control information, bond or cash-account information, fees, and an operating plan.

39.    Under the Cannabis Act, an operator must satisfy location restrictions within the state of Utah.

40.    Operators must only operate at the physical address within the state provided to the Utah Department of Agriculture.

41.    Under the Cannabis Act, an operator must maintain real-time inventory tracking through Utah's Electronic Verification System, dispense only through licensed medical cannabis pharmacies to authorized patients, and transport cannabis only through specified licensed channels with a transportation manifest.

42.    The Cannabis Act includes specific requirements for individuals seeking employment with a cannabis operator.

43.    Before an individual can be employed by a cannabis operator, the Cannabis Act requires that the individual first be registered with the Utah Department of Agriculture, which includes a requirement that the prospective employee submit a fingerprint card and pass a background check.

44.    Any *interstate* manufacture, distribution, dispensing, or possession with intent to distribute marijuana would fall outside the Cannabis Act and remain subject to federal controlled-substance restrictions, including 21 U.S.C. § 841(a)'s prohibition on manufacturing, distributing, dispensing, or possessing with intent to distribute or dispense a controlled substance except as federally authorized.

45.    Cannabis has long been classified as a Schedule I drug under the Controlled Substances Act, making it unlawful under federal law.

46.    At the time of the conduct giving rise to the NLRB Case in 2024, cannabis was classified as a Schedule I drug under federal law.

47.    In 2026, the federal government placed marijuana products regulated under a qualifying state medical-marijuana license into Schedule III.

48.    Therefore, in Utah, absent licensing and strict adherence to the requirements of the Cannabis Act, the cultivation and sale of cannabis remain unlawful under federal law.

49.    The NLRA was enacted by Congress to "eliminate the causes of certain substantial obstructions to the free flow of commerce…."  29 U.S.C. § 151.

50.    The NLRA limits the NLRB's jurisdiction to private employers "affecting commerce."

51.    Specifically, the NLRA provides the following definitions:

(6) The term "commerce" means trade, traffic, commerce, transportation, or communication *among the several States, or between the District of Columbia or any Territory of the United States* and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.

(7) The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.

29 U.S.C. §152 (6) and (7) (emphasis added).

8

52.    Section 14(c)(1) of the NLRA empowers the Board to exercise discretion to decline jurisdiction where it determines that the effect of a labor dispute on commerce is "not sufficiently substantial to warrant the exercise of its jurisdiction."

53.    The NLRB's assertion of jurisdiction over state cannabis employers is not based on some of act of Congress, but instead a non-binding Advice Memorandum issued by a former Associate General Counsel of the NLRB's Division of Advice on October 25, 2013.

54.    The NLRB's assertion of jurisdiction over state-licensed cannabis employers rests on an agency-created policy judgment, not on any express or even implied Congressional intent.

55.    As the Supreme Court decided in *Loper Bright Enterprises v. Raimondo,* a court must exercise independent judgment in determining whether an agency, such as the NLRB, acted within its statutory authority. 603 U.S. 369 (2024).

56.    The NLRB's reliance on *Gonzales v. Raich* is misplaced because the Court in *Raich* did not hold that every federal agency may treat state-licensed cannabis commerce as ordinary lawful commerce under every other federal statute. 545 U.S. 1 (2005).

57.    The Board is improperly attempting to convert Congress's power to suppress cannabis commerce under the Controlled Substances Act into an implied delegation to promote, stabilize, or administer labor relations in the same federally restricted market.

58.    The NLRB's monetary jurisdictional standards do not create their own statutory jurisdiction where such jurisdiction does not otherwise exist.

59.    Monetary thresholds are administrative standards the NLRB uses after statutory jurisdiction exists; they are not an independent grant of authority.

60.     The NLRB's assertion of jurisdiction over state-controlled cannabis employers, such as The Flower Shop, is not entitled to administrative deference under *Loper Bright Enterprises v. Raimondo.*

61.     The Flower Shop bears a strong likelihood of success in demonstrating that the NLRB is wrongfully exercising jurisdiction over it for the reasons stated above.

62.     Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will have endured proceedings before a federal agency subject to an unlawful assertion of jurisdiction.

63.     Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will be subject to an administrative order requiring it take certain affirmative action, including, but not limited to, reinstatement of terminated employees and the posting of a notice from a federal agency that does not lawfully have jurisdiction over it.

64.     The harm to The Flower Shop, in the event declaratory and injunctive relief is not granted, far outweighs any harm or mere inconvenience to the NLRB if such relief is granted.

65.     Public interest is best served by not allowing the NLRB to continue to operate in an unconstitutional manner.

**COUNT II**
**THE NLRB'S ALJS ARE**
**UNCONSTITUTIONALLY INSULATED FROM REMOVAL**

66.     The Flower Shop restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

67.     NLRB Administrative Law Judges ("ALJs") are inferior officers of an executive agency. *See* U.S. Const. Art. II, § 2; *Lucia v. SEC*, 138 S. Ct. 2044, 2053-55 (2018); *Jarkesy v.*

*SEC*, 34 F.4th 446, 464 (5th Cir. 2022), aff'd No. 22-859, 603 U.S. 109 (2024); *Westrock Servs.*, 366 N.L.R.B. No. 157, slip op. at 1 (2018) ("Board judges, like SEC judges, are inferior officers").

68.    NLRB ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence during unfair labor practice hearings.

69.    Authorities exercised by NLRB ALJs include the following examples: determining whether to permit "certain lines of inquiry," *Am. Life Ins. and Accident Co.*, 123 NLRB 529, 530 (1959); placing time limits on a party's presentation of its case, *Dickens, Inc.*, 355 NLRB 255, 256-258 (2010); granting applications for subpoenas, NLRB Rules and Regulations, § 102.35(a)(2); ruling on petitions to revoke subpoenas, NLRB Rules and Regulations, § 102.35(a)(4); ruling upon offers of proof and receiving relevant evidence, NLRB Rules and Regulations, § 102.35(a)(5); excluding persons or counsel from the hearing for contemptuous conduct, NLRB Rules and Regulations, § 102.35(a)(6); striking witness testimony, *Nassau Ins. Co.*, 280 NLRB 878, 897 (1986); ruling on procedural requests and motions, including motions for default judgment, motions for summary judgment, motions to dismiss, motions to amend, motions to consolidate or sever, and motions to reopen the record, NLRB Rules and Regulations, § 102.35(a)(8); approving stipulations of fact, NLRB Rules and Regulations, § 102.35(a)(9); and issuing decisions, including bench decisions, NLRB Rules and Regulations, § 102.35(a)(10).

70.    In presiding over the administrative hearing, the NLRB ALJs make credibility determinations that will only be reversed by the NLRB upon showing of "a clear preponderance of the all the relevant evidence convinces [the Board] that they are incorrect." *Standard Dry Wall Products, Inc.*, 91 NLRB 544 (1950).

71.     The NLRB Rules and Regulations further set forth the requirements for an NLRB ALJ's decision:

> After a hearing for the purpose of taking evidence upon a complaint, the Administrative Law Judge will prepare a decision. The decision will contain findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and recommendations for the proper disposition of the case. If the Respondent is found to have engaged in the alleged unfair labor practices, the decision will also contain a recommendation for such affirmative action by the Respondent as will effectuate the policies of the Act…

NLRB Rules and Regulations, § 102.45(a).

72.     Under the NLRA, the NLRB ALJ has authority to recommend a number of different "affirmative actions," including, but not limited to, reinstatement of terminated employees and the posting of a notice that is crafted based on the NLRB ALJ's findings and conclusions.  NLRB Rules and Regulations, § 102.45(a).

73.     If neither party files exceptions to the NLRB ALJ's decision, the NLRB Rules provide that the "findings, conclusions, and recommendations contained in the Administrative Law Judge's decision will, pursuant to Section 10(c) of the Act, automatically become the decision and order of the Board and become its findings, conclusions, and order, and all objections and exceptions must be deemed waived for all purposes."  NLRB Rules and Regulations, § 102.48(a) (emphasis added).

74.     The Constitution requires that the President be able to exercise authority over the functions of inferior officers of an executive agency. This exercise of authority contemplates the ability of the President to "intervene in their inferior officers' actions" at will.

75.    By statute, the NLRB ALJs may only be removed from office "for good cause established and determined by the Merit Systems Board on the record after opportunity for hearing before the [Merit System Protection] Board." 5 U.S.C. §7521(a).

76.    Members of the Merit Systems Protection Board are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 7521(d).

77.    Under this statutory scheme, NLRB ALJs can only be removed for good cause after an opportunity for a hearing before the Merit Systems Protection  Board, and the Merits Systems Protection Board Members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office."

78.    Therefore, NLRB ALJs are insulated from removal by the President by at least two layers of for-cause removal protections.

79.    The statutes' provision of at least two layers of removal protection for NLRB ALJs prevents the proper exercise of Presidential authority over those officers as mandated by Article II of the Constitution. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 492-508 (2010).

80.    Due to these unconstitutional restrictions on the President's Article II removal authority, neither the assigned NLRB ALJ nor the supervising NLRB Members face any presidential accountability, allowing them to conduct proceedings against The Flower Shop without regarding or constraining their actions based on the President's oversight.

81.    The Flower Shop is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [The Flower Shop is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

82.    The Flower Shop bears a strong likelihood of success for the reasons stated above.

83. Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will have endured a proceeding before officers who are unconstitutionally insulated from Presidential oversight.

84. Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will be subject to credibility determinations, which are subject to a highly deferential standard of review, made by an officer who is unconstitutionally insulated from, and unconstrained by, Presidential oversight.

85. Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will be subject to an administrative order requiring it to take certain affirmative actions, including, but not limited to, reinstatement of terminated employees and the posting of a notice that is crafted based on the NLRB ALJ's findings and conclusions. NLRB Rules and Regulations, § 102.45(a).

86. Moreover, if the NLRB Members, on recommendation from the NLRB ALJ, issue a final order against The Flower Shop, the constitutional injury will be irremediable because retrospective relief is not available to parties who are subjected to an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins v. Yellin*, 141 S. Ct. 1761, 1787-89 (2021).

87. The harm to The Flower Shop, in the event declaratory and injunctive relief is not granted, far outweighs any harm or mere inconvenience to the NLRB if such relief is granted.

88. The public interest is best served by preventing the NLRB from continuing to operate in an unconstitutional manner.

## COUNT III
## THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

89.    The Flower Shop restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

90.    The NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

91.    These powers include the authority to exercise prosecutorial power in federal district courts, 29 U.S.C. § 160(j); *see, e.g., Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]"); to determine units for the purpose of collective bargaining, direct representation elections, decide unfair labor practice charges, and issue subpoenas, 29 U.S.C. §§ 159, 160; and engage in policy and rulemaking on topics such as the standard for determining joint employer status, appropriate units in the healthcare industry, etc.

92.    Under the NLRA, Board Members may only be removed "for neglect of duty or malfeasance in office," and after notice and a hearing, and the statute explicitly prohibits removal for any other cause, like inefficiency.  29 U.S.C. § 153(a).

93.    The NLRB Members exercise substantial executive power and the restrictions on their removal from office violate Article II of the Constitution.

94.    Because of these unconstitutional restrictions on the President's authority under Article II of the Constitution, the NLRB Members need not concern themselves in the least with how the President may view their actions during the proceedings against The Flower Shop or constrain their actions accordingly because they are insulated from removal by the President.

95.     The Flower Shop is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [The Flower Shop is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

96.     The Flower Shop bears a strong likelihood of success for the reasons stated above, especially given the Supreme Court's recent decision on June 29, 2026, in *Trump v. Slaughter,* 609 U.S. ___ (2026), Case No. 25-332.

97.     Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will have endured a proceeding before officers who are unconstitutionally insulated from, and unconstrained by, Presidential oversight.

98.     Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it will be subject to the credibility determinations, which are reviewed by the NLRB Board Members on a highly deferential standard that is very difficult to overcome, made by an officer and subsequently reviewed by other officers, all of which are unconstitutionally insulated from, and unconstrained by, Presidential oversight.

99.     Without interim injunctive relief from this Court, The Flower Shop will be irreparably harmed because it may be subject to an administrative order requiring it take certain affirmative actions, including, but not limited to, reinstatement of terminated employees and the posting of a notice that is crafted based on the NLRB ALJ's findings and conclusions and subsequently reviewed by a NLRB Members, all of which are unconstitutionally insulated from, and unconstrained by, Presidential oversight.  NLRB Rules and Regulations, § 102.45(a).

100.    Moreover, if the NLRB Members, on recommendation from the NLRB ALJ, issue a final order against The Flower Shop, the constitutional injury will likely be irremediable because

retrospective relief is not available to parties who are subjected to an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins v. Yellin*, 594 U.S. 220, 257-260 (2021).

101.    The harm to The Flower Shop, in the event declaratory and injunctive relief is not granted, far outweighs any harm or mere inconvenience to the NLRB if such relief is granted.

102.    Public interest is best served by preventing the NLRB to continue operating in an unconstitutional manner.

**COUNT IV**

**THE NLRB PROCEEDINGS VIOLATE THE FLOWER SHOP'S SEVENTH AMENDMENT RIGHT TO A JURY TRIAL**

103.    The Flower Shop restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

104.    The Seventh Amendment to the Constitution of the United States provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII,

105.    The right to a jury trial is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified, but instead encompasses "all suits which are not of equity or admiralty jurisdiction, whatever may be the particular form they may assume." *SEC v. Jarkesy*, 603 U.S. 109 (2024).

106. The Seventh Amendment extends to suits brought under a statute if the claim is "legal in nature." *Id*.

107. The only relief expressly authorized by Congress under the NLRA is equitable relief in the form of a cease-and-desist order and affirmative action including reinstatement of employees with or without backpay. 29 U.S.C. § 160(c).

108. The NLRA does not authorize legal relief, including compensatory damages, nor did Congress "establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct" when it enacted the NLRA. *Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am (UAW-CIO v. Russell)*, 356 U.S. 634, 643 (1958).

109. While the restitution in the form of backpay is a form of equitable relief authorized under the NLRA, other forms of compensatory damages are not equitable relief.

110. Despite no statutory authority to do so, the Board has authorized the recovery of legal relief in the form of consequential or compensatory damages. *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022), *enf. denied in part and vacated in part, Thryv Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024).

111. NLRB ALJs have issued decisions, and continue to issue decisions, ordering an employer to pay employees for damages beyond those expressly permitted by the NLRA.

112. NLRB Members have affirmed a NLRB ALJ decision as recently as June 1, 2026, awarding a terminated employment damages for "direct or foreseeable pecuniary harms incurred as a result of her unlawful disciplinary actions and discharge, including reasonable search-for-work and interim employment expenses, regardless of whether those expenses exceed her interim

18

earnings." *Floss N Gloss PA d/b/a Aqua Dental,* 374 NLRB No. 122 (June 1, 2026) (affirming ALJ decision awarding employee damages for "direct or foreseeable pecuniary harms" and stating that the Board would continue to apply *Thryv.*)

113. The expanded remedies being sought by the NLRB include such items as "front pay," "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. NLRB GC Memorandum 21-06 (Sept. 8, 2021).

114. These expanded remedies go beyond the vindication of public rights, "the public interest in effecting federal labor policy," and instead focus on "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990).

115. The fact that a federal administrative agency also seeks equitable relief does not strip The Flower Shop of its jury-trial right. *Jarkesy*, 34 F.4th at 454 ("the Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims").

116. The fact that NLRB proceedings are administrative in nature does not deprive The Flower Shop of its jury-trial right. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the NLRB. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989).

117. In the absence of the injunctive relief from this Court, The Flower Shop's claims will be improperly adjudicated by an administrative officer (subject to unconstitutional removal

provisions), instead of a jury, and The Flower Shop may be required to pay damages to individuals without the appropriate safeguards provided by a jury.

118. The Flower Shop has a strong likelihood of success on this claim for the reasons detailed above.

119. Unless the NLRB is enjoined from proceeding with the administrative hearing against The Flower Shop before an NLRB ALJ rather than a jury, The Flower Shop will be irreparably harmed because it may be forced to pay damages that are not permitted to be determined without a jury seated before an Article III court.

120. The harm to The Flower Shop, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

121. The grant of injunctive and declaratory relief on this claim will serve the public interest by not allowing the NLRB to continue to operate in an unconstitutional manner.

122. Indeed, preservation of Seventh Amendment rights is "of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of that right" has always been and "should be scrutinized with the utmost care." *Jarkesy*, 603 U.S. at 116.

### **PRAYER FOR RELIEF**

WHEREFORE, The Flower Shop requests that the Court order the following relief and enter a judgment:

1. Declaring that:

   a. The NLRB does not have jurisdiction over The Flower Shop, as a state cannabis operator and/or the NLRB has asserted wrongful jurisdiction over The Flower Shop, a Utah state cannabis operator;

20

b.  The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional;

c.  The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional;

d.  The NLRB's continued compliance with its decision in *Thryv* and the awarding of legal relief in the form of consequential or compensatory damages without a jury violates the Seventh Amendment of the Constitution.

2.  Preliminarily enjoining Defendants from subjecting The Flower Shop to jurisdiction of the NLRB;

3.  Preliminarily enjoining Defendants from subjecting The Flower Shop to unconstitutionally structured proceedings pending the final resolution of this act;

4.  Preliminarily enjoining Defendants from subjecting The Flower Shop to implementing or carrying out the unconstitutional removal-protection provisions identified above;

5.  Awarding The Flower Shop its costs and expenses incurred in bringing this action, including but not limited to, reasonable attorneys' fees; and

6.  Awarding such other and further relief, whether at law or in equity as the Court deems just and proper.

DATED: July 7, 2026

**VALLIS LEGAL, PLLC**

/s/ Philip L. Martin
Philip L. Martin (USB 11923)
1445 North 1200 West
Orem, UT 84057
385-429-0484
philip@vallislegal.com

21

Docusign Envelope ID: 9A9BD53D-7043-87C0-8161-F38C2C2790C0

BRUECKNER SPITLER SHELTS PLC

/s/ Jeffrey W. Toppel
Jeffrey W. Toppel (*pro hac vice application pending*)
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
(480) 483-9600
jtoppel@bss.law
*Attorney for Plaintiff The Flower Shop*

## VERIFICATION

I, Mellissia Yonk, am the Human Resources Manager for the Plaintiff in this matter, True North of Utah, LLC d/b/a The Flower Shop. I declare under penalty of perjury that I have read the Verified Complaint and that I know and understand the contents thereof to be true and correct to the best of my knowledge, except the matters stated therein on information and belief, and as to those matters, I believe the Verified Complaint to be true and correct.

DATED this __07___ day of July, 2026

Mellissia Yonk

22