# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRUE NORTH OF UTAH, LLC, d/b/a THE FLOWER SHOP,<br><br>        Plaintiff,<br><br> v.<br><br>NATIONAL LABOR RELATIONS BOARD, et al.,<br><br>        Defendants. | **MEMORANDUM DECISION & ORDER REGARDING PENDING MOTIONS**<br><br>Case No. 1:26-cv-00108-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on the Emergency Motion for Preliminary Injunction filed by Plaintiff True North of Utah, d/b/a/ The Flower Shop ("TFS").[1] The Court is also in receipt of the Emergency Motion to Intervene filed by United Food and Commercial Workers, Local 99 ("Union").[2] The Court did not hear oral argument.[3] For the reasons below, the Court will deny TFS's Emergency Motion for Preliminary Injunction. As such, the Court will deny as moot the Union's Emergency Motion to Intervene to the extent it seeks emergency intervention with respect to the preliminary injunction. To the extent the Union's Motion seeks intervention in this action generally, the Motion will remain pending, and the Court will determine that Motion when it has

---

[1] ECF No. 12, filed July 8, 2026.

[2] ECF No. 26, filed July 16, 2026.

[3] Under DUCivR 7-1(g), a request for oral argument on a motion will be granted only on good cause shown. Otherwise, "the court will determine a motion based upon the parties' written memoranda." DUCivR 7-1(g). Here, no party has requested oral argument, and the Court does not feel that oral argument would be beneficial to the Court nor productive for the parties at this juncture. Furthermore, while it is in the Court's discretion to hold an evidentiary hearing on a motion for preliminary injunction, such a hearing is unnecessary here, where the issues are legal, rather than evidentiary, ones. *See Shaw v. AAA Eng'g & Drafting, Inc.,* 213 F.3d 538, 545 (10th Cir. 2000) ("An evidentiary hearing, however, was unnecessary to resolve these legal issues.").

been fully briefed.

## BACKGROUND

Plaintiff True North of Utah, LLC d/b/a The Flower Shop ("TFS") is a Utah limited liability company organized for the purpose of operating a cannabis operation pursuant to the Utah Medical Cannabis Act, Utah Code § 26B-4-216.[4] The instant action arises from unfair labor practice ("ULP") charges filed by United Food and Commercial Workers, Local 99 ("Union").[5] The Defendants in this action are the National Labor Relations Board and several affiliated officials in their official capacities (collectively, "NLRB").[6]

On June 18, 2026, the Regional Director for NLRB Region 27 issued a Complaint and Notice of Hearing,[7] which was subsequently amended on July 6 and July 13[8] (the latter of which will be referred to herein as "ULP Complaint") against TFS based on the Union's charges. The ULP Complaint alleges (1) that on or about March 21, 2024, the Union sent a letter signed by a number of TFS's employees seeking union recognition; (2) that TFS, over the following several weeks, discharged four of the signatories; (3) that TFS then banned two of the discharged employees from entering TFS's premises; and (4) that TFS has refused to respond to the Union's recognition request or to bargain with the Union.[9] The ULP Complaint further alleges that, through these actions, TFS has violated Section 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("NLRA") by discriminating against and discouraging union membership and Section 8(a)(1) and 8(a)(3) by failing to recognize and bargain with the Union.[10] The ULP

---

[4] ECF No. 1 ¶ 34.
[5] *See* ECF No. 24, Ex. A.
[6] ECF No. 1 ¶¶ 18–24.
[7] *Id*. Ex. A.
[8] ECF No. 24, Ex. A.
[9] *Id*. at 3–5.
[10] *Id*. ¶¶ 9–10.

Complaint seeks the following relief: reinstatement of the discharged employees, an order requiring TFS to recognize and bargain with the Union, to make the discharged employees whole "for any additional expenses incurred as direct and foreseeable result of their termination and/or ban from the facility," and to mail and read any resulting Board Notice.[11]

TFS was notified that a hearing would be held before an NLRB administrative law judge ("ALJ") on July 21, 2026.[12] TFS filed its Answer to the ULP Complaint on July 2, 2026, raising various affirmative defenses.[13] On July 15, 2026, TFS filed a motion with the ALJ to postpone the hearing.[14] To the extent of the Court's knowledge, this motion remains pending.[15]

On July 8, 2026, TFS filed its Emergency Motion for Preliminary Injunction, asking the Court to enjoin the ongoing administrative proceedings against it, including the administrative hearing set to begin on July 21, 2026.[16] The NLRB filed its Opposition on July 16, 2026,[17] to which TFS replied on July 17, 2026.[18]

Also on July 16, 2026, the Union filed an Emergency Motion to Intervene.[19]

## DISCUSSION

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'"[20] Because preliminary injunctive relief is a drastic remedy and "the exception rather than the rule[,]"[21] a movant's

---

[11] *Id.* ¶ 12.
[12] ECF No. 1, Ex. A at 5.
[13] ECF No. 24 at 6. TFS does not appear to dispute this assertion.
[14] *Id.* TFS does not appear to dispute this assertion.
[15] *See id.*
[16] ECF No. 12.
[17] ECF No. 24.
[18] ECF No. 31.
[19] ECF No. 26.
[20] *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).
[21] *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020), *abrogated on other grounds by Garland*

"right to relief must be clear and unequivocal."[22] A party seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must show the following:

> (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.[23]

This case is one of the many that have been filed across the country seeking to enjoin NLRB proceedings as unconstitutional. "[I]njunctive relief is an extraordinary remedy and that proposition certainly holds true in this case."[24] As one district court put it, "[the employer's] position—if accepted—would neuter the National Labor Relations Act by blocking all proceedings before the National Labor Relations Board, the independent agency that has steadfastly and exclusively enforced the statute for the past eighty-nine years against entities accused of unfair labor practices. Quite extraordinary, indeed."[25] Here, the Court will deny TFS's request for extraordinary relief for two reasons: (1) the Norris-LaGuardia Act ("NLGA") bars this Court from issuing injunctive relief in this case, and (2) TFS has failed to establish that it will suffer irreparable harm absent an injunction. Because the Court will deny TFS's Emergency Motion for Preliminary Injunction, the Court will deny as moot the Union's Emergency Motion to Intervene to the extent it seeks emergency intervention with respect to the preliminary injunction. To the extent the Motion to Intervene seeks intervention in this action generally, it remains pending, and briefing will proceed in the normal course prescribed under

---

v. Cargill, 602 U.S. 406 (2024).

[22] Id.

[23] First W. Cap. Mgmt. Co. v. Malamed, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting Fish v. Kobach, 840 F.3d 710, 723 (10th Cir. 2016)).

[24] Alivio Med. Ctr. v. Abruzzo, No. 24-cv-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024).

[25] Id.

the local rules.[26]

## A.      The Norris-LaGuardia Act

The NLGA contains anti-injunction provisions that "strip district courts of jurisdiction to issue injunctions in cases growing out of a labor dispute unless they follow strict procedures."[27] As the NLGA provides,

> [n]o court of the United States[ ] . . .  shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.[28]

"This broad prohibition reflects Congress' intent to 'tak[e] the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction in the [NLGA].'"[29] While 29 U.S.C. § 101, if applicable to a case, "does not bar injunctive relief outright[,] . . . it strips the district court of jurisdiction to grant the requested relief unless the case fits an exception[.]"[30] 29 U.S.C. § 107, for example, "provides for limited circumstances under which a district court can grant preliminary injunctive relief in a labor dispute, subject to rigid requirements."[31] Courts have also recognized two narrow judicially-created exceptions: (1) "a district court can enjoin a labor dispute when necessary to reconcile Norris-LaGuardia with the mandates of a specific labor statute[,]"[32] and (2) "injunctions are permitted when necessary to

---

[26] *See* DUCIVR 7-1(a)(4)(D).

[27] *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, 160 F.4th 380, 384 (3d Cir. 2025).

[28] 29 U.S.C. § 101.

[29] *VHS Acquisition Subsidiary No. 7 v. NLRB*, 805 F. Supp. 3d 1, 9 (D.D.C. 2024) (quoting *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960)).

[30] *Spring Creek*, 160 F.4th at 384.

[31] *Red Rock Resorts, Inc. v. NLRB*, No. 2:24-cv-01966-ART-BNW, 2025 WL 2784607, at *9 (D. Nev. Sept. 30, 2025) (citing 29 U.S.C. §§ 107–09).

[32] *VHS Acquisition*, 805 F. Supp. 3d at 12 (citation modified) (citing *Bhd. of R. R. Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 40 (1957)).

accommodate Norris-LaGuardia's strong policy favoring arbitration."[33]

"[T]he first question in deciding whether the NLGA bans an injunction is whether th[e] case grows out of a 'labor dispute' for purposes of that statute."[34] The term "labor dispute" under the NLGA is defined as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment[.]"[35] While not without bounds, "[t]he Supreme Court has repeatedly admonished that th[is] definition is not to be given a narrow construction."[36] "'The critical element' in determining whether a controversy constitutes a labor dispute 'is whether the employer-employee relationship is the matrix of the controversy.'"[37]

Here, "[t]he subject of the NLRB's charge against [TFS] undoubtedly involves a labor dispute."[38] The ULP Complaint alleges that TFS took certain actions against several of its employees that amounted to discrimination against and discouragement of union membership and a failure to recognize and bargain with the Union. The employer-employee relationship is the matrix of that controversy, and indeed, the parties do not appear to dispute this. The question is, rather, whether this case, wherein TFS asserts constitutional challenges that are collateral to the merits of the unfair labor practices charges, still "involves" or "grows out of" TFS's labor dispute with the Union within the meaning of the NLGA.

---

[33] *Id.* (citation modified) (citing *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 708 (1982)).

[34] *Hannam Chain USA, Inc. v. NLRB*, No. CV 25-2896 (TJK), 2025 WL 3204539, at *3 (D.D.C. Nov. 17, 2025).

[35] 29 U.S.C. § 113(c).

[36] *VHS Acquisition*, 805 F. Supp. 3d at 10 (citing *Burlington N. R. Co. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429, 441–42 (1987)).

[37] *Id.* (quoting *Jacksonville*, 457 U.S. at 712).

[38] *Spring Creek*, 160 F.4th at 384.

As TFS indicates, there is some disagreement among the circuit courts who have addressed this issue in similar cases. The Fifth Circuit held that "structural claim[s]" challenging "the structure of the Board itself" do not "'grow out of' a labor dispute" because they do "not implicate wages, hours, working conditions, or even union representation. They have nothing to do with employee boycotts, union organization, or labor strikes. Nor do the Employers seek to block the Board from adjudicating any particular unfair-labor-practice charge."[39] The Third and the Ninth Circuits have taken a different approach. The Third Circuit, noting the statute's breadth, found that while the constitutional issues the plaintiff raised were "collateral to the merits of the unfair labor practices charge,"[40] the case nonetheless involved or grew out of the labor dispute between the union and the employer.[41] As the Third Circuit reasoned, the employer "could not have brought this action but for the underlying dispute. And if the District Court enjoined the NLRB's administrative proceedings, it would prevent the tribunal tasked by Congress with deciding the Union's unfair labor practices charge from resolving the merits of the case."[42] Such an action "would put a thumb on the scale for [the employer] in the underlying dispute, precisely the kind of judicial interference in management-labor relations the Act's anti-injunction provisions seek to prevent."[43] Similarly, the Ninth Circuit stated that "[t]he constitutional nature of [the employer's] claims is not determinative" and that "[the employer's] constitutional challenges concern the Board's power to adjudicate the labor dispute that exists between [the employer] and the [union]. Indeed, . . . this lawsuit was sparked by those proceedings."[44]

---

[39] *Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 770 (5th Cir. 2025).
[40] *Spring Creek*, 160 F.4th at 385.
[41] *Id*.
[42] *Id*. (internal citation omitted).
[43] *Id*. at 386 (citation modified).
[44] *Amazon.com Servs., LLC v. Teamsters Amazon Nat'l Negotiating Comm.*, 163 F.4th 624, 635

The Court agrees with the reasoning articulated in the Third and Ninth Circuit decisions and with the broader approach those courts have taken. Pursuant to the NLGA, "[t]he pending case need only involve or grow out of that dispute, it need not itself be a labor dispute."[45] Furthermore, as the Supreme Court has explained, the NLGA's jurisdictional bar "merely requires that the case involve 'any' labor dispute."[46] In this Court's view, "[t]he outgrowth from a 'labor dispute' to this case is obvious."[47] "[I]n short, no labor dispute, no lawsuit."[48] Several district courts have reached similar conclusions.[49] And while TFS argues that an injunction in this case would not "restrain" the Union, the Court finds particularly persuasive the notion that were it to prevent the NLRB proceeding, it "would put a thumb on the scale for [the employer] in the underlying dispute, precisely the kind of judicial interference in management-labor relations the Act's anti-injunction provisions seek to prevent."[50] Such judicial interference in favor of an employer discourages engagement in union activity.

TFS argues that this interpretation cannot be squared with the Supreme Court's decision in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023). In doing so, it seems to the Court that TFS may conflate the Court's ability to issue an injunction with the Court's ability to review TFS's constitutional claims. "[T]he NLGA merely bars injunctive relief, not judicial review, and Congress's power to explicitly strip courts of certain remedies is

---

(9th Cir. 2025) (citation modified).

[45] *Amazon.com Servs., LLC*, 163 F.4th at 630 (citation modified) (citing 29 U.S.C. § 113(a)); *see also Spring Creek*, 160 F.4th at 385–86 (noting the distinction between the labor dispute and the subject litigation).

[46] *Jacksonville*, 457 U.S. at 711.

[47] *Hannam Chain USA*, 2025 WL 3204539, at *4.

[48] *Hoffmann Bros. Heating & Air Conditioning, Inc. v. NLRB*, No. 4:25-cv-01356-SRC, 2025 WL 2695565, at *3 (E.D. Mo. Sept. 22, 2025).

[49] *See, e.g., id.*; *Hannam Chain USA*, 2025 WL 3204539, at *4; *VHS Acquisition*, 805 F. Supp. 3d at 10 ("Saint Vincent's beef with the Board is due to its conflict with the Union."); *Red Rock Resorts*, 2025 WL 2784607 at *7.

[50] *Spring Creek*, 160 F.4th at 386 (citation modified).

well-settled."[51] In any event, *Axon* is inapposite to this particular issue.[52] As *Axon* explains, Congress "may substitute for . . . district court authority an alternative scheme of review."[53] It "may do so explicitly, providing in so many words that district court jurisdiction will yield. But Congress also may do so implicitly, by specifying a different method to resolve claims about an agency action."[54] The Supreme Court in *Axon* addressed the latter—administrative review schemes that implicitly strip jurisdiction from a district court.[55] Such schemes "are different from the *explicit* jurisdiction-stripping provision at issue here."[56] Here, "Congress, through the NLGA, explicitly withdrew this Court's power to grant an injunction in a case arising out of a labor dispute[.]"[57] "When Congress withholds jurisdiction, [courts] must respect its choice."[58]

In sum, this action involves or grows out of a labor dispute, and as such, it falls within the scope of the NLGA's broad prohibition on injunctive relief. TFS has not sought injunctive relief on the bases permitted under the NLGA nor has it argued that another exception permitting injunctive relief applies. The NLGA thus prohibits this Court from granting the extraordinary relief TFS requests, and the Court must deny TFS's Motion.

---

[51] *Red Rock Resorts*, 2025 WL 2784607, at *9.

[52] The principles articulated in *Axon* may have bearing on other issues in this case. For example, the NLRB argues that the Court lacks jurisdiction over several claims TFS has asserted, including its Seventh Amendment claim. Based on these arguments, the Court has concerns that it may lack jurisdiction to review those claims, concerns that TFS has not assuaged. However, as the instant request for extraordinary relief can be denied on several other grounds, the Court will not reach that issue here, as it prefers to wait for the benefit of more substantial briefing that has not occurred on such an expedited basis. The Court will, nonetheless, state that where such questions regarding the Court's jurisdiction to review those claims exist, it cannot be said that TFS has established a likelihood of success on the merits of those claims.

[53] *Axon*, 598 U.S. at 185.

[54] *Id*.

[55] *See id*. at 185.

[56] *Red Rock Resorts*, 2025 WL 2784607, at *10 (emphasis in original).

[57] *Id*.

[58] *Axon*, 598 U.S. at 217 (Gorsuch, J., concurring).

## B.    Irreparable Harm

Even if the NLGA did not prevent this Court from issuing an injunction, TFS has failed to establish that it will suffer irreparable harm if this injunction is denied.

"'[T]he single most important prerequisite' to preliminary injunctive relief is 'a showing of probable irreparable harm[,]'"[59] and thus "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[60] "A party's harm is *irreparable*" where, for example, "'the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.'"[61] Such harm must also be "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."[62] And it is insufficient that a mere "possibility" of irreparable, imminent harm exists; rather, a party seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction."[63] In short, "[t]o constitute irreparable harm, an injury must be certain, great, actual and not theoretical."[64] In the absence of a showing of a significant risk of irreparable injury, a movant "is not entitled to the extraordinary remedy of a preliminary injunction[,]" and the other preliminary injunction factors need not be addressed.[65]

"Tenth Circuit precedent establishes that, while violations of certain individual constitutional rights, without more, can constitute irreparable harm, violations of the

---

[59] *Thurston*, 697 F. Supp. 3d at 1269 (quoting *Malamed*, 874 F.3d at 1141).
[60] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).
[61]  *Thurston*, 697 F. Supp. 3d at 1269 (emphasis in original) (quoting *Dominion Video Satellite*, 269 F.3d at 1156).
[62] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis in original).
[63] *Winter*, 555 U.S. at 22 (emphasis in original).
[64] *Heideman*, 348 F.3d at 1189 (citation modified).
[65] *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1255 (10th Cir. 2017).

Constitution's separation of powers provisions do not."[66] Furthermore, "under current Supreme Court precedent, succeeding in a constitutional challenge to an agency official's removal protections is not sufficient, by itself, to warrant relief from proceedings before that agency official."[67] The plaintiff, rather, "must show that the unconstitutional removal protections made a difference in its case[.]"[68]

TFS claims that it does not allege that merely being subjected to the NLRB proceeding alone constitutes irreparable harm but then argues that its injury arises from the NLRB proceeding's being "prosecuted and adjudicated through an agency whose decisional officers are insulated from presidential control[.]"[69] But even while the agency officers' removal protections may be unconstitutional, TFS must show that the unconstitutional removal protections *made a difference in its case*. TFS has failed to do so. Instead, it offers vague and conclusory assertions that it "will be subject to irreparable harm that is not speculative and that cannot be remedied by a final review of the federal Court of Appeals."[70] What this harm is, however, is unclear to this Court. According to TFS, "it is being compelled to try the case through an unconstitutional procedure."[71] To that end, TFS states that the NLRB has, for example, issued subpoenas requiring the attendance of witnesses and the production of various documents, but by TFS's own concession, it does not claim that merely being subjected to the NLRB proceeding alone constitutes irreparable harm—the Court is uncertain how any unconstitutional removal protections may have tainted these subpoenas or any other aspect of the proceedings here. And regardless of whether the NLRB ALJ's credibility determinations are subject to a high level of

---

[66] *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 753 (10th Cir. 2024).
[67] *Id.*
[68] *Id.*
[69] ECF No. 12 at 21.
[70] *Id.* at 22.
[71] ECF No. 31 at 9.

deference, TFS must still show that the ALJ's unconstitutional removal protections made a difference, which it does not do.

TFS attempts to distinguish its situation from *Leachco* because it "cites harm beyond just that resulting from the NLRB's Separation of Powers violations . . . [it] further alleges it suffered an individual violation of its constitutional rights by the NLRB's deprivation of its right to a jury trial under the Seventh Amendment of the Constitution."[72] In making such arguments, TFS, like the plaintiff in *Leachco*, misinterprets the Tenth Circuit's decision in *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792 (10th Cir. 2019), where it stated that "[w]hat makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of any constitutional right fits that bill."[73] As the Tenth Circuit has clarified, "all that *Free the Nipple* was saying was that the lack of a monetary remedy could make an otherwise adequately alleged harm 'irreparable'—not that it would itself constitute the injury in the absence of a specifically alleged harm flowing from a constitutional violation."[74] "In other words, if [a plaintiff] fails to show that the alleged constitutional violation has caused it, or will cause it, specific harm, then [a plaintiff] cannot establish irreparable harm—even if it is unable to recover money damages."[75]

Nonetheless, TFS is correct that the Tenth Circuit in *Leachco* distinguished the case from *Free the Nipple* because *Leachco* involved only the separation of powers rather than individual rights.[76] The instant action involves the Seventh Amendment right to a jury trial in addition to the separation of powers. While TFS has not directed the Court to any case law establishing that

---

[72] ECF No. 12 at 23.
[73] *Free the Nipple*, 916 F.3d at 806.
[74] *Leachco*, 103 F.4th at 755.
[75] *Id.*
[76] *Id.*

a violation of the Seventh Amendment could, standing alone, constitute irreparable injury,[77] the

Court acknowledges that in the context of individual rights, the Tenth Circuit has said that

"[m]ost courts consider the infringement of a constitutional right enough and require no further

showing of irreparable injury."[78] This issue is not without some controversy, as it has been

suggested that "[a]llowing *any* deprivation of *any* constitutional right to serve as per se

irreparable harm is a far-too-powerful tool in most cases."[79] But in any event, TFS has failed to

establish a likely violation of its Seventh Amendment right,[80] and "without a constitutional

---

[77] The Tenth Circuit has stated that "our cases finding that a violation of a constitutional right alone constitutes irreparable harm are limited to cases involving individual rights, not the allocation of powers among the branches of government." *Aposhian*, 958 F.3d at 990. In doing so, the Tenth Circuit cited to case law addressing equal protection violations, as well as First Amendment violations. *Id*. Similarly, TFS has directed the Court only to cases involving equal protection violations and First Amendment violations. *See Free the Nipple*, 916 F.3d at 806 (finding irreparable harm for alleged equal protection violation); *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1264–65 (10th Cir. 2016) (finding irreparable harm for alleged First Amendment violation). It is possible that a violation of the Seventh Amendment may be distinguishable. As the Second Circuit stated, "[c]onstitutional violations—particularly First Amendment violations—have been presumed irreparable when, by their nature, their injury cannot be undone. That conclusion, however, does not obtain universally." *Care One, LLC v. NLRB*, 166 F.4th 335, 348 (2d Cir. 2026) (internal citation omitted). And "[i]t is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial." *Ponte v. FDIC*, No. 24-cv-2379 (APM), 2024 WL 4730602, at *8 (D.D.C. Oct. 11, 2024) (collecting cases). Here, TFS complains that its Seventh Amendment right could possibly be violated by the potential imposition of certain damages. Any damages award, however, could be undone on review with the court of appeals. *See Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) ("[N]othing about the NLRB proceedings will permanently deprive Plaintiffs of their Seventh Amendment right. Rather, as detailed in the NLRA, Plaintiffs can seek review of the NLRB's decision in the court of appeals."); *see* 29 U.S.C. § 160(f).

[78] *Free the Nipple*, 916 F.3d at 805.

[79] *Aposhian*, 958 F.3d at 1000 n.6 (Carson, J., dissenting) (emphasis in original).

[80] The Court's analysis of whether irreparable harm exists with respect to a Seventh Amendment violation also speaks to the issue of whether TFS has established that it is likely to succeed on the merits of its claim. *See Free the Nipple*, 916 F.3d at 806 ("[I]n the context of constitutional claims, the principle collapses the first and second preliminary-injunction factors, equating likelihood of success on the merits with a demonstration of irreparable injury.") With respect to likelihood of success on the merits, the Court, as it noted earlier, is not convinced that it has jurisdiction over this claim. As one district court stated, "Congress clearly intended that deciding

violation, [TFS] has no harm, let alone irreparable harm."[81]

First is "the simple fact 'that the Seventh Amendment right to a jury trial does not attach to NLRB proceedings.'"[82] The Seventh Amendment is implicated "if the claim is legal in nature."[83] "To determine whether a suit is legal in nature, [the Supreme Court] directed courts to consider the cause of action and the remedy it provides."[84] Under the public-rights exception, Congress may "properly insulate even legal remedies from the Seventh Amendment right to a jury trial where the underlying proceeding involves 'public rights[,]'"[85] which are, in essence, matters that "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them."[86] "[A]lmost a century ago the Supreme Court held that the Seventh Amendment does not apply to unfair labor practice proceedings, which involve statutory rights 'unknown to the common law' and which fall under the public-rights exception."[87] While TFS contends that the Supreme Court in *Jones & Laughlin* did not specifically address the remedies of which TFS complains,[88] it fails to explain how these remedies alter the finding that an NLRB

issues like what statutory remedies are permissible under the NLRA should be done pursuant to the NLRA framework—i.e., raised before the NLRB in the first instance and then the Circuit Court on review." *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 516 (E.D. Mich. 2024). It cannot thus be said that TFS has shown a likelihood of success on the merits of this claim. Nonetheless, even assuming the Court does have jurisdiction over this claim, TFS has failed to establish irreparable injury.

[81] *Leachco*, 103 F.4th at 759.

[82] *Meharry Med. Coll. v. NLRB*, No. 3:24-cv-01258, 2025 WL 1372842, at *5 (M.D. Tenn. May 12, 2025) (quoting *Yapp*, 748 F. Supp. 3d at 514 (citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937)).

[83] *SEC v. Jarkesy*, 603 U.S. 109, 122 (2024) (citation modified).

[84] *Id.* at 122–23.

[85] *Yapp*, 748 F. Supp. 3d at 514.

[86] *Jarkesy*, 603 U.S. at 128 (citation modified).

[87] *Yapp*, 748 F. Supp. 3d at 514 (citing *Jones & Laughlin*, 301 U.S. at 48–49).

[88] The remedies complained of are those recently authorized in *Thryv, Inc.*, 372 NLRB, No. 22, 2022 WL 17974951, at *1 (Dec. 13, 2022). Specifically, the NLRB "authorized its Regional Directors to seek make-whole relief for direct or foreseeable pecuniary harm arising from an

proceeding "is not a suit at common law" but is "one unknown to the common law."[89] "[N]o involvement by an Article III court in the initial adjudication" of a case involving such public rights "is necessary."[90]

Furthermore, even if the Seventh Amendment could be implicated by the NLRB proceeding, any such violation here is purely speculative, and "[p]urely speculative harm will not suffice[.]"[91] TFS argues that the NLRB's imposition of "purely legal damages" implicates its right under the Seventh Amendment. But the imposition of any award against TFS is at this time a mere possibility. TFS refutes the charges against it, and while it is not for this Court to determine, the NLRB proceeding could go in TFS's favor just as it could go against. To that end, while it is possible the *Thryv* remedies may be imposed, "it is possible that the ALJ, or NLRB on review, never reach the issue of *Thryv* remedies or find them inappropriate here."[92] Moreover, "any injury stemming from a consequential damages award" of which TFS complains "is not beyond remediation, since [TFS] can seek review of the NLRB's decision—including any damages award or relief imposed—in the court of appeals."[93] Indeed, as the Sixth Circuit has stated, "[a]n NLRB remedial order is not self-executing, and the 'respondent can violate it with impunity until a court of appeals issues an order enforcing it.'"[94] As such, "nothing about the NLRB proceedings will permanently deprive [TFS] of [its] Seventh Amendment right."[95] This Court therefore agrees with the several courts that have rejected arguments related to the Seventh

---

unfair labor practice." *Yapp*, 748 F. Supp. 3d at 512 (citation modified).

[89] *Jones & Laughlin*, 301 U.S. at 48.

[90] *Jarkesy*, 603 U.S. at 128.

[91] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

[92] *Yapp*, 748 F. Supp. 3d at 517.

[93] *Hannam Chain USA*, 2025 WL 3204539, at *9 (citation modified).

[94] *Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir. 1996) (quoting *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 890 (7th Cir. 1990)); *see* 29 U.S.C. § 160(e).

[95] *Ares*, 2024 WL 4581436, at *2.

Amendment similar to those of TFS.[96]

TFS's remaining theories of irreparable harm are equally unavailing. It contends that the proceedings will cause it economic harm, but it is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[97] TFS also contends that the publicity attendant to this litigation is likely to harm its reputation. This statement is too cursory to justify the imposition of extraordinary relief. TFS has not presented evidence of any such publicity or reputational harm.

Overall, TFS has failed to show that it will suffer irreparable injury absent the requested injunction. The Court thus need not reach the remaining elements.[98] Any right TFS may have to injunctive relief here is far from clear and unequivocable, and this Court would not be justified in issuing such extraordinary relief. The Court must deny TFS's Motion.

### **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that TFS's Emergency Motion for Preliminary Injunction (ECF No. 12) is DENIED.

IT IS FURTHER ORDERED that the Union's Emergency Motion to Intervene (ECF No. 26) is DENIED AS MOOT to the extent it seeks emergency intervention with respect to the preliminary injunction. To the extent the Union's Motion seeks intervention in this action generally, the Motion remains pending. Briefing on this Motion will proceed in the normal course prescribed under DUCIVR 7-1(a)(4)(D).

---

[96] *See, e.g., id.*; *Yapp*, 748 F. Supp. 3d at 517; *Hannam Chain USA*, 2025 WL 3204539, at *9; *Meharry Med. Coll.*, 2025 WL 1372842, at *5.
[97] *Heideman*, 348 F.3d at 1189.
[98] *New Mexico Dep't of Game & Fish*, 854 F.3d at 1255.

DATED this 20th day of July 2026.          BY THE COURT:

 

_____
Ann Marie McIff Allen
United States District Judge